UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BENJAMIN REYES et al.,

        Plaintiffs,        Case No. 1:11-cv-1283

v.        Honorable Paul L. Maloney

KENNETH T. McKEE et al.,

        Defendants.
_____/

**OPINION**

This is a civil rights action brought by two state prisoners pursuant to 42 U.S.C. § 1983.  The Court has granted Plaintiffs leave to proceed *in forma pauperis*.  Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiffs' *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiffs' allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, Plaintiffs' action will be dismissed for failure to state a claim and/or because Defendants are entitled to qualified immunity.

**Factual Allegations**

Plaintiffs Benjamin Reyes and Josue Mesa-Cabello presently are incarcerated with the Michigan Department of Corrections and housed at the Bellamy Creek Correctional Facility (IBC). Plaintiffs sue the following IBC employees: Warden Kenneth T. McKee; Food Service Director B. Schaefer; Assistant Food Service Director Tim Freed; and Food Service Supervisor D. Ward.

Plaintiffs allege that they were assigned to the IBC food service department. On November 13, 2011, Plaintiffs were speaking to one another while working in the kitchen. Defendant Ward approached them and loudly and aggressively stated (verbatim):

> I am tired of [YOU PEOPLE] speaking that spanish bulls**t, or whatever damn language YOU call it around me. . . Speak fuc*ing English when YOU'RE around me, or go back to your Unit's if Y'ALL cannot follow my Rules in my kitchen.

(Compl., docket #1, Page ID#8.) Twenty-five minutes later, Defendant Ward again approached Plaintiff, stating (verbatim):

> Didn't I tell YOU, and YOUR buddy over there to STOP speaking that Spanish bulls**t around me? Go somewhere else if YOU'RE gonna speak that sh*t, just don't speak it around me. . . . . Do YOU understand that?

(*Id.*) After Defendant Ward had yelled at Plaintiffs, he called them to his office and continued to berate them and to threaten to fire them for speaking in Spanish in the kitchen, saying:

> Nobody's gonna challenge me (Defendant D. WARD) for firing a couple of worthless damn prisoners, I (Defendant D. WARD) do it everyday. . . Now I'm not gonna tell YOU fuckers about speaking that Spanish bulls**t around me again. Now get the fuck out of my office.

(*Id.*, Page ID#9.)

Plaintiffs allege that Ward's conduct violated their First Amendment right to free speech, their Eighth Amendment right to be free from cruel and unusual punishment, and their

Fourteenth Amendment right to due process. In addition, Plaintiffs contend that the remaining Defendants violated the same constitutional provisions by failing adequately to respond to their grievances and failing to properly supervise their subordinates. Plaintiffs also allege that Defendants' failure to address their grievances was both retaliatory and conspiratorial.

Plaintiffs seek declaratory and injunctive relief, together with compensatory and punitive damages.

## Discussion

### I. Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not

'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

        **A. Defendants McKee, Schaefer and Freed**

Plaintiffs allege that Defendants McKee, Schaefer and Freed are responsible for Defendant Ward's conduct because they failed to properly supervise Ward and failed to conduct an investigation in response to Plaintiffs' grievances. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 129 S. Ct. at 1948; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance

or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 129 S. Ct. at 1948. Plaintiff has failed to allege that Defendants McKee, Schaefer or Freed engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them for their failure to supervise or respond to Plaintiffs' grievances.

In addition, Plaintiffs' claims against Defendants McKee, Schaefer and Freed are not saved by Plaintiffs' allegations that they conspired to retaliate against Plaintiffs for speaking Spanish. To state a claim for conspiracy, a plaintiff must plead with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987); *Smith v. Rose*, 760 F.2d 102, 106 (6th Cir. 1985); *Pukyrys v. Olson*, No. 95-1778, 1996 WL 636140, at *1 (6th Cir. Oct. 30, 1996). A plaintiff's allegations must show (1) the existence or execution of the claimed conspiracy, (2) overt acts relating to the promotion of the conspiracy, (3) a link between the alleged conspirators, and (4) an agreement by the conspirators to commit an act depriving plaintiff of a federal right. *Lepley v. Dresser*, 681 F. Supp. 418, 422 (W.D. Mich. 1988). "[V]ague allegations of a wide-ranging conspiracy are wholly conclusory and are, therefore, insufficient to state a claim." *Hartsfield v. Mayer*, No. 95-1411, 1996 WL 43541, at *3 (6th Cir. Feb. 1, 1996). A simple allegation that defendants conspired to cover up wrongful actions is too conclusory and too speculative to state a claim of conspiracy. *Birrell v. Michigan,* No.

94-2456, 1995 WL 355662, at *2 (6th Cir. June 13, 1995). Here, Plaintiffs make only a single conclusory allegation regarding Defendants McKee, Schaefer and Freed conspiring to retaliate against Plaintiff. Such conclusory alllegations of conspiracy fail to state a claim.

Moreover, Plaintiffs fail to allege any retaliatory conduct by these Defendants. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Here, even assuming that Plaintiffs had a First Amendment right to speak to one another in Spanish,[1] Plaintiffs fail to allege that McKee, Schaefer or Freed took any adverse action against them. Instead, Plaintiffs simply allege that the three Defendants did not take any action to discipline Ward. Further, Plaintiffs make no factual allegations that would support a finding that Defendants' actions were motivated by Plaintiffs' protected conduct. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th

---

[1]*See* Section II(B) of this opinion, *infra*.

Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive). Plaintiffs merely allege the ultimate fact of retaliation in this action. They have not presented any facts to support their conclusion that Defendants McKee, Schaefer or Freed retaliated against them or conspired to retaliate against them for the exercise of their rights. Accordingly, Plaintiffs' speculative allegations fail to state a claim.

### B. Defendant Ward

Plaintiffs complain that, by his use of abusive language and his restriction on Plaintiffs' speech, Defendant Ward violated Plaintiffs' rights under the First and Eighth Amendments and the Due Process Clause of the Fourteenth Amendment.

#### 1. First Amendment

Plaintiffs contend that they were deprived of their First Amendment rights to speak to one another in Spanish. They make no allegations that their ability to communicate was impaired by the requirement of speaking English, and their highly articulate pleadings indicate that they are fluent in English. Instead, Plaintiffs suggest that the First Amendment permits them to communicate in the language of their choice at all times, including during their prison employment.

In the non-prison context, the Supreme Court long has recognized that "'a state cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression.'" *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006) (quoting *Connick v. Myers*, 461 U.S. 138, 142 (1983)). Nevertheless, the Court has recognized that "[g]overnment employers, like private employers, need a significant degree of control over their employees' words and actions; without it, there would be little chance for the efficient provision of public services." *Id.* at 418. In balancing the First Amendment interests against the needs of the public employer, the Supreme Court has recognized that governments acting as employers may place limits on the free speech rights of their employees unless those employees are speaking as citizens about matters of public concern." *Id.* at 419 (citing *Connick*, 461 U.S. at 147; *Pickering v. Bd. of Educ. of Township High School*, 391 U.S. 563, 573 (1968)).

Even in the ordinary government employee context, therefore, it is far from clearly established that public employers lack the ability to require their employees to speak English in their supervisor's presence. In *Maldonado v. Altus*, 433 F.3d 1294 (10th Cir. 2006), the Tenth Circuit addressed the question, holding that "[t]he First Amendment is not violated when a public employer disciplines an employee for speaking Spanish at work if the employer had no motive to quash expression on a matter of public concern." *Id.* at 1313, *abrogated in part on other grounds*, *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) (addressing an unrelated claim regarding an employee's opposition to a practice that violates Title VII). The court rejected the conclusion that an employee has a First Amendment right to speak Spanish at work and that any such expression constitutes a matter of public concern. *Id.*

Moreover, as the *Maldonado* court recognized, the issue of restricting employees' use of a foreign language to communicate with one another was not the subject of *Yniguez v. Arizonans for Official English*, 69 F.3d 920 (9th Cir. 1995) (en banc), *vacated as moot*, 520 U.S. 43 (1997). Instead, *Yniguez* involved the constitutionality of an amendment to the Arizona Constitution that made English the official language of Arizona and prohibited the use of any other language in the performance of government business. *See Maldonado*, 433 F.3d at 1312.

As a consequence, even in the non-prison context, the case law does not clearly bar a public employer from requiring that English be spoken on the job. In the prison context, a court's evaluation of restrictions on inmates' rights is substantially more limited. While inmates retain certain constitutional rights, prison officials may impinge on these constitutional rights if the regulation "is reasonably related to legitimate penological interests." *See Turner v. Safley*, 482 U.S. 78, 89 (1987). To determine whether a prison official's actions are reasonably related to a legitimate penological interest, the Court must assess an official's actions by reference to the following factors: (1) whether there exists a valid, rational connection between the prison regulation and the legitimate governmental interest; (2) whether there remain alternative means of exercising the right; (3) the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (4) whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests. *Turner*, 482 U.S. at 89-90. The fourth factor requires that the "prisoner has pointed to some obvious regulatory alternative that fully accommodates the asserted right while not imposing more than a *de minimis* cost to the valid penological goal." *See Overton v. Bazzetta*, 539 U.S. 126, 136 (2003) (upholding prison's ability to restrict First Amendment right of association by

limiting prisoner visitation and by temporarily eliminating all visitation for inmates with two substance-abuse violations).

There exist a limited number of cases that discuss restrictions on the use of a foreign language in written and telephonic communications by prisoners, all of which recognize that a prison has a legitimate penological interest in prison security that may be impacted by foreign-language communications. *See Ortiz v. Fort Dodge Corr. Facility*, 368 F.3d 1024 (8th Cir. 2004) (upholding a prison's limitation on written communication in a foreign language); *Kikumura v. Turner*, 28 F.3d 592 (7th Cir. 1994) (striking a prison policy of summarily rejecting foreign language publications without an attempt to translate or screen the materials); *Boriboune v. Litscher*, 91 F. App'x 498 (7th Cir. 2003) (distinguishing *Kikumura*, 28 F.3d 592, and upholding a prison requirement that a prisoner first obtain approval before communicating on the telephone in a foreign language).

The Court is aware of only one other case that has addressed a situation comparable to the claim raised by Plaintiffs in the instant case. In *Allah v. Poole*, 506 F. Supp. 2d 174 (W.D.N.Y. 2007), the court considered a commissary supervisor's requirement that prisoner employees speak in English while working in the commissary. Applying the *Turner* standard, the *Allah* court concluded that the supervisor's prohibition on Spanish did not give rise to a constitutional right. The court accepted as a legitimate penological interest the supervisor's claim that, for her own safety, she needed to be able to understand what prisoners were saying during the time they were working with her, alone in the commissary. *Id.* at 183. Moreover, as the Supreme Court has recognized, many prison restrictions bear a "self-evident" connection to the state's interest in maintaining internal security and preventing future crimes. *Bazzetta*, 539 U.S. at 133 (addressing a restriction on prisoner visitation with former prisoners).

In the instant case, Ward's legitimate penological interest was patently obvious. As a kitchen supervisor, Ward unquestionably had a valid penological interest in insisting that the employees working under his supervision not speak in a language that he could not understand. *See Allah*, 506 F. Supp. 2d at 183-84. Allowing prisoners to talk in a language that Ward could not understand created potential safety risks of which Ward would be unaware, such as, if food-service workers were planning an assault, a theft of food, an escape attempt or the smuggling of a kitchen implement as a weapon. Moreover, Ward would be unable to monitor and prevent any brewing insubordination.

In addition, the order not to speak Spanish was rationally related to that interest. As the Supreme Court repeatedly has emphasized, the problems of prison administration are peculiarly for resolution by prison authorities and their resolution should be accorded deference by the courts. *See Washintgon v. Harper*, 494 U.S. 210, 224 (1990); *Turner*, 482 U.S. at 84-96; *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987); *Bell v. Wolfish*, 441 U.S. 520, 547 (1979); *Jones v. North Carolina Prisoners' Labor Union*, 433 U.S. 119, 125-126 (1977). That deference is particularly broad in matters of prison security. *See Whitley v. Albers*, 475 U.S. 312, 322 (1986).

With respect to the second *Turner* factor, Ward's ban on Plaintiffs' use of Spanish extended only to the times they were working in the kitchen under his supervision. Plaintiffs therefore had ample opportunity to speak Spanish at other times. In addition, from the complaint, Plaintiffs' English-language skills are strong, and they do not allege that their ability to communicate was impaired. As a result, Ward's directive had only a narrow impact on Plaintiffs' ability to communicate or to communicate in Spanish.

As for the third *Turner* factor, the Court is unable to identify an accommodation of Plaintiffs' asserted right except by allowing Plaintiffs to continue to converse freely in Spanish. Such an accommodation "would vitiate the very aim of [Ward's] order, which was to prevent the inmates from carrying on conversations in [Ward's] presence that [he] was unable to understand." *Allah*, 506 F. Supp. 2d at 184. Arguably, the asserted right also could be accommodated by at all times ensuring that Spanish-speaking prison employees were present in the kitchen. That solution, however, would implicate the fourth *Turner* factor, as the burden on the prison to ensure such staffing would be substantial and costly – not *de minimis*, as required by *Turner*.

Finally, even if Ward's prohibition on the speaking of Spanish in the kitchen was improper, Defendant Ward nevertheless would be entitled to dismissal of the action on the basis of qualified immunity. Generally, when government officials perform discretionary functions, they are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also, Behrens v. Pelletier*, 516 U.S. 299, 301 (1996); *Davis v. Scherer*, 468 U.S. 183, 195 (1984). The purpose of qualified immunity is to avoid excessive disruption of governmental functions and to dispose of frivolous claims at the early stages of litigation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The question of whether a defendant enjoys qualified immunity is a question of law for the Court to resolve. *See Siegert v. Gilley*, 500 U.S. 226, 232 (1991). Because qualified immunity is an immunity from suit, not just a defense to liability, *Saucier*, 522 U.S. at 200-01, the issue should be resolved at the earliest possible stage in litigation, *Siegert*, 500 U.S. at 232.

When evaluating claims of qualified immunity, the Court employs a two-step analysis. At the first step, the Court determines whether the facts, construed in the light most favorable to the plaintiff, establish a violation of his constitutional rights. *See Pearson v. Callahan*, 129 S.Ct. 808, 815-16 (2009) (citing *Saucier*, 533 U.S. at 201). If the facts, construed in the light most favorable to the plaintiff, demonstrate a violation of the plaintiff's constitutional rights, the Court must then determine whether the right in question was "clearly established" at the time the defendant acted. *Id.* When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999).

In the instant case, the Court already has addressed the first step of this analysis, concluding that the Plaintiffs have failed to allege the violation of their rights under the First Amendment. However, even were the Court incorrect in that determination, Defendant Ward would still be entitled to qualified immunity because the right was not clearly established. As previously discussed, no Supreme Court or Sixth Circuit authority exists on Plaintiffs' First Amendment claim. Indeed, few courts have addressed whether prohibitions on the speaking of a foreign language in the workplace violates the First Amendment. Among those that have, however, most have found no constitutional implication. *See Maldonado*, 433 F.3d at 1313. Further, no case in this or any other circuit has ruled that such a prohibition in the prison work context violates the First Amendment.

Accordingly, Plaintiffs' First Amendment claim must be dismissed both because it fails to state a claim and because Defendants are immune.

2. Eighth Amendment

Plaintiff alleges that Defendant Ward's use of derogatory language and his insistence that Plaintiffs not speak Spanish while in the kitchen amounted to cruel and unusual punishment. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

Plaintiffs' allegations fall far short of demonstrating the sort of barbarous conduct necessary to demonstrate a violation of the Eighth Amendment. The use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See Ivey*, 832 F.2d at 954-55; *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* No. 02-6366, 2003 WL 22097827, at *3 (6th Cir. Sept. 5, 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr.

24, 1997) (verbal harassment is insufficient to state a claim); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment and idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment.").

Moreover, the prohibition on Plaintiffs' use of Spanish during their prison employment does not deprive Plaintiffs of necessities such as food, medical care or basic sanitation. Plaintiffs make no allegation that they were unable to speak with one another or with the other employees in the kitchen. They merely allege that they were required to use English while doing so. Accordingly, Plaintiffs fail to state an Eighth Amendment claim against Defendant Ward arising from his alleged verbal abuse and restriction on the use of Spanish.

### 3. Due Process

Plaintiffs allege that they were denied due process by Defendant Ward's failure to comply with a variety of MDOC policies. Defendant's alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not

rise to the level of a constitutional violation because policy directive does not create a protectable liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

Moreover, reading Plaintiffs' complaint liberally, they suggest that they were threatened with discharge from their kitchen jobs, in violation of the Due Process Clause. The Sixth Circuit consistently has found that prisoners have no constitutionally protected liberty interest in prison employment under the Fourteenth Amendment. *See, e.g.*, *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (district court properly dismissed as frivolous the plaintiff's claim that he was fired from his prison job); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey*, 832 F.2d at 955 ("[N]o prisoner has a constitutional right to a particular job or to any job"); *Carter v. Tucker*, No. 03-5021, 2003 WL 21518730, at *2 (6th Cir. July 1, 2003) (same). Morever, "as the Constitution and federal law do not create a property right for inmates in a job, they likewise do not create a property right to wages for work performed by inmates." *Carter*, 2003 WL 21518730, at *2 (citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991) and *James v. Quinlan*, 866 F.2d 627, 629-30 (3d Cir. 1989)). Under these authorities, Plaintiffs fail to state a due process claim arising from the threatened or actual termination of their prison employment.

**Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiffs' action will be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c) for failure to state a claim and/or because Defendants are entitled to qualified immunity.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiffs appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiffs are barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If they are barred, they will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:   March 5, 2012                    /s/ Paul L. Maloney
                                          Paul L. Maloney
                                          Chief United States District Judge